■ In the Matter of FIRSTMARK DEVELOPMENT CO., INC., Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent. [726 NYS2d 391] —Order, Supreme Court, New York County (Emily Goodman, J.), entered March 7, 2000, which denied and dismissed petitioner's CPLR article 78 petition seeking to annul respondent's determination, dated June 7, 1999, that the purported waiver by a tenant of his rights to challenge a rent overcharge was unenforceable, unanimously reversed, on the law, without costs, the petition granted, the determination annulled, and the agreement between petitioner and tenant reinstated.

John O'Toole moved into Apartment 2B, a rent stabilized apartment, at 113 East 36th Street in Manhattan in May 1996 as a month-to-month tenant without a written lease at an initial rent of $1,700 per month. In May 1997, the then landlord, Elena Fanelli, raised his rent to $1,900 a month. Mr. O'Toole filed a rent overcharge complaint with the Division of Housing and Community Renewal (DHCR) on February 27, 1998. In response, Mrs. Fanelli explained that the total increase consisted of a 7% Rent Guidelines increase of $119, plus 1/40 of $3,300, or $82, for improvements to the apartment. Thereafter, in July and October 1998, DHCR sent Mrs. Fanelli two additional requests, which went unanswered, for further

information about the rental history of the apartment and documentation of the improvements she had made to it. In December, DHCR sent a final notice proposing to find that there had been a rent overcharge and, pursuant to Rent Stabilization Code (9 NYCRR) § 2526.1 (a) (1), to impose treble damages on the overcharge, and giving the owner "a final opportunity to show that there was no overcharge and/or that any overcharge was not willful." Mrs. Fanelli did not respond, and on January 22, 1999, DHCR sent an order finding a rent overcharge totaling $2,200 ($200 per month for 11 months) and imposing treble damages of $6,600.

On February 9, 1999, Mrs. Fanelli filed a Petition for Administrative Review of the rent overcharge order. She stated that, by stipulation between herself and Mr. O'Toole dated March 10, 1998, he had agreed to withdraw his DHCR complaint. She also claimed that she had never received any DHCR notices or the order. Mrs. Fanelli explained that she was traveling frequently to Italy because of a sick daughter there and decided in February 1998 to sell the building. When she advised Mr. O'Toole to find another apartment, he told her he wanted to remain in the building. He had rented Apartment 2B on the understanding that he would be there only until he found a larger space. Their "Surrender Agreement" provides for Mrs. Fanelli to combine Apartments 5A and 5B and Mr. O'Toole to vacate Apartment 2B on or before June 15, 1998, and move into Apartment 5A/5B. The agreement further provides: "Mr. O'Toole expressly agrees to withdraw and discontinue with prejudice all claims pending before the New York State Division of Housing and Community Renewal. Mr. O'Toole also agrees that he will not commence any claim with the DHCR based upon any events heretofore."

On April 3, 1998, the parties signed a lease on Apartment 5A/5B, an unregulated apartment, for a three-year term beginning June 15, 1998, at a rent of $2,200 per month, and Mr. O'Toole moved into Apartment 5A/5B, which Mrs. Fanelli had combined and renovated at a cost of $14,000, some time later.

Mrs. Fanelli was in Italy between June and October 1998 and, because her superintendent was also out of the country, Mr. O'Toole offered to take care of certain things in the building. She left signed checks with him, he collected her mail, and he held keys to all the apartments. When Mrs. Fanelli returned, Mr. O'Toole gave her the mail. However, she emphasized that she never received any mail addressed to 113 East 36th Street from DHCR. She discovered the Rent Administrator's order imposing $6,600 in damages when she returned from another trip to Italy in February 1999.

She also received from Mr. O'Toole a proposal for settling the matter of the $200 per month overcharge. His letter reads, in pertinent part: "While you were gone [in Italy] I did not hear from the new owner and was not sure to whom to forward the rent in your absence. Now that you are here, I suggest that we finalize our landlord/tenancy in the following manner.

"As you know, during the years 1997-8 you collected a rent increase of $200 dollars [sic] a month for eleven months (5/97-4/98) that according to the DHCR was in excess of the legal rent for 2A. I suggest that we settle that matter now by crediting the unauthorized amount collected ($2200) as *early payment* toward the past months [sic] rent. Seen as *early payments* these excess collections would not act to generate any interest or DHCR penalties.

| | | |
|---|---|---|
| "12/15 - 1/15 rent due | | $2200 |
| 1/15 - 2/15 rent due | | $2200 |
| subtotal | | $4400 |
| *early payments* | | - $2200 |
| balance | = | $2200 (check attached). |

"Once I have received notification from the new owner that he is in receipt of my security deposit (my security has apparently never been reflected in any tenant security account statements), I will immediately forward the 2/15-3/15 rent to him or to you, as you and he advise. Until that notification, I will mail each month's rent amount to your current mailing address at the *end* of each rental period until the security is transferred. In this way, **my lease obligations with you are current** as of this date/check and will remain so until I receive further documentation regarding the building's new ownership and the transfer of my security deposit. If this agreement is not acceptable to you, please advise in writing." (Emphases in original.)

The present landlord, petitioner Firstmark Development Co., Inc., acquired title to the building on March 30, 1999.

In answer to Mrs. Fanelli's Petition for Administrative Review, Mr. O'Toole asserted that their agreement never went into effect, because Mrs. Fanelli failed to comply with certain provisions and unilaterally modified the terms of the agreement, rendering all its provisions unenforceable, "including my withdrawal of a DHCR complaint." The modification apparently pertains to whether Apartment 2B would be furnished or unfurnished when Mr. O'Toole vacated it. In her petition, Mrs. Fanelli said she was grateful to Mr. O'Toole for his looking after the building while she was away and noted that "he took some good furniture from apt 2B when he moved on [sic] 5A & 5B—and it was OK with me."

DHCR denied the petition, citing Rent Stabilization Code (RSC) § 2520.13, which at that time provided: "An agreement by the tenant to waive the benefit of any provision of the RSL or this Code is void; provided, however, that based upon a negotiated settlement between the parties and with the approval of the DHCR, or a court of competent jurisdiction, or where a tenant is represented by counsel, a tenant may withdraw, with prejudice, any complaint pending before the DHCR."

DHCR concluded that, since the agreement was not approved by a court of competent jurisdiction in a proceeding in which the tenant was represented by counsel, "and the tenant is, in fact, disputing that the agreement ever went into effect," it would be a violation of RSC § 2520.13 to find that the tenant withdrew his complaint.

Petitioner Firstmark commenced an article 78 proceeding in which it contended that DHCR's determination was arbitrary and capricious. The IAS court denied the petition on the ground that "[a] tenant's alleged waiver of a right provided by the Rent Stabilization Law or Code is lawful only if RSC § 2520.13 is complied with," and it was not complied with in this case.

We reverse on the ground that DHCR's determination was arbitrary and capricious. DHCR rejected Mrs. Fanelli's petition merely because Mr. O'Toole stated that the agreement never went into effect, while the record demonstrates that Mrs. Fanelli fulfilled her obligations under the agreement and Mr. O'Toole moved into the apartment at 113 East 36th Street that she enlarged for him according to the terms of that agreement. There is no indication that DHCR made a factual determination that the agreement never went into effect and, indeed, such a determination would be "without sound basis in reason and without regard to the facts" (*Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 759 [judicial review of an administrative determination is limited to the grounds invoked by the agency]).

DHCR also emphasized that the parties' agreement was not approved by a court, and on appeal it adds that DHCR itself did not approve the agreement. But DHCR was not powerless to approve it when Mrs. Fanelli, who not unreasonably expected Mr. O'Toole to submit it to DHCR with the withdrawal of his complaint, submitted the agreement on her Petition for Administrative Review. DHCR does grant owners' Petitions for Administrative Review on the ground that the tenants agreed, in agreements between the parties or otherwise, to withdraw their overcharge complaints and that "a tenant is

permitted to withdraw a rent-overcharge complaint while a petition for administrative review is pending following a Rent Administrator's order determining a lawful stabilization rent and finding a rent overcharge" (see, Matter of ALP Realty Co., DHCR Administrative Review Docket No. DC510001RO, Nov. 8, 1996; Matter of Otterman, DHCR Administrative Review Docket No. FG110212RO, Oct. 3, 1997; see also, Matter of Field Delivery Serv. [Roberts], 66 NY2d 516, 518 [agency's failure to decide like cases the same way or explain the departure is arbitrary and capricious]).

Finally, RSC § 2526.1 (a) (1) provides: "Any owner who is found by the DHCR, after a reasonable opportunity to be heard, to have collected any rent or other consideration in excess of the legal regulated rent shall be ordered to pay to the tenant a penalty equal to three times the amount of such excess." (Emphasis added.) Mrs. Fanelli asserted in her Petition for Administrative Review that she never received DHCR's follow-up notices requesting substantiation of the rent increase, and the record demonstrates that she was in Italy and Mr. O'Toole was collecting her mail at the time that DHCR was sending the follow-up notices. Thus, it was not established that Mrs. Fanelli received the appropriate notice from DHCR before it found the overcharge and imposed damages. We note that she should have been given an opportunity to show that the overcharge was not willful. Concur—Williams, J. P., Ellerin, Wallach, Lerner and Rubin, JJ.